UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ENCOVA INSURANCE,

                                                Case No. 21-cv-11982

      Plaintiff,

vs.                                             HON. MARK A. GOLDSMITH

WEST BEND MUTUAL INSURANCE,

      Defendant.

_____/

## OPINION & ORDER
## (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 34) AND (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 35)

This case concerns a dispute between two insurance companies. Plaintiff Encova Insurance already reimbursed its insured for damages caused by a fire, and it now argues that Defendant West Bend Mutual Insurance covered the same loss and should share the bill. Each party has filed a motion for summary judgment. See Pl. Mot. (Dkt. 34); Def. Mot. (Dkt. 35). For the reasons that follow, the Court grants Encova's motion and denies West Bend's motion.[1]

## I. BACKGROUND

As detailed below, Family Foods Super Store, LLC—a grocery store located on Rosa Parks Boulevard in Detroit, Michigan—attempted to leave its previous insurer, Encova, and execute a new insurance agreement with West Bend. However, after suffering fire loss, Family Foods sought

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The briefing also includes Encova's response (Dkt. 37), West Bend's response (Dkt. 36), Encova's reply (Dkt. 38), and West Bend's reply (Dkt. 39).

1

to retroactively cancel its new West Bend policy and seek coverage for the fire damage under only its old Encova policy.

### A. New Insurance Agreement with West Bend

Family Foods was initially insured by Encova through the agency Johnson Lewis Associates, Inc. (JLA).  See Encova Renewal Policy (Dkt. 35-2); Cardella Dep. at 8 (Dkt. 34-3). Mike Cardella, a JLA agent, assisted multiple Family Foods-affiliated stores in changing insurers from Encova to West Bend.  Cardella Dep. at 8–9.  After Cardella left JLA and formed Core Insurance Group, he consulted with John Konja—part owner and general manager of the Family Foods business at issue in this case—about also moving to West Bend.  See id. at 6, 10–11, 22–25.

Konja agreed to change insurers from Encova to West Bend, believing West Bend offered better coverage and better rates.  Konja Dep. at 7–8, 32 (Dkt. 34-2).  On May 4, 2021, Core submitted an application to West Bend requesting insurance coverage for Family Foods with a policy inception date of June 1, 2021.  See 5/4/21 Email (Dkt. 34-4).  On May 25, Core employee Stephanie Hartmann emailed Andrew Chevalier, an underwriter for West Bend, directing him to bind coverage "effective 6/1/21."  5/25/21 Email (Dkt. 34-6).  The participants at Core and Family Foods understood that Konja had authorized Core to make this agreement with West Bend on Family Foods's behalf.  See Cardella Dep. at 22; Hartmann Dep. at 11–12 (Dkt. 34-5); Konja Dep. at 7–8.

West Bend issued its new policy for Family Foods—i.e., internally accepted the policy and set an effective date for coverage—on June 3, 2021, with a coverage date beginning June 1.[2]

---

[2] See Chevalier Dep. at 14–15, 33–34 (Dkt. 34-7); West Bend Policy Dec. (Dkt. 34-8) (containing commercial policy declaration identifying Family Foods's customer number, policy number, policy period (beginning June 1, 2021), and coverage schedule for its West Bend policy); Def. Br.

**B.  Encova and West Bend Policies: Other Insurance and Cancellation**

Family Foods never cancelled its policy with Encova.  On May 25, 2021, Core emailed a cancellation request to Konja requesting his signature to cancel the Encova coverage, but the cancellation request was never signed.  Cardella Dep. at 30–31.

The Encova policy and the West Bend policy both include identical "Other Insurance" clauses, which state:

> You <u>may have other insurance</u> subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part.  If you do, <u>we will pay our share of the covered loss or damage</u>.  Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

Encova Policy Conditions (Dkt. 34-16) (emphasis added); West Bend Policy Conditions (Dkt. 34-17) (emphasis added).

As to cancellation, the West Bend policy states: "The Named Insured shown in the Declarations may cancel this policy by giving us or our authorized agent notice of cancellation." West Bend Policy Part 2 at PageID.828 (Dkt. 35-6).  The Encova policy contains identical cancellation language.  <u>See</u> Encova Renewal Policy at PageID.446.

**C. Fire Loss and Attempted Cancellation of West Bend Insurance**

On June 8, 2021, there was a fire at Family Foods that destroyed all of the business's goods and did damage to the property.  Konja Dep. at 18–19.

Konja understood based on Cardella's representations that both the West Bend and Encova policies could be "involved" in providing coverage for the fire loss.  <u>Id.</u> at 15.  After the fire loss—

---

in Supp. Mot. at 3 (conceding that West Bend issued its policy on June 3) (citing West Bend Policy Part I at PageID.693 (Dkt. 35-5)); Sawmiller Dep. at 12, 18–20, 25 (Dkt. 34-10) (reflecting understanding of JLA president Jay Sawmiller—who remained associated with Core's accounts as Core transitioned to an independent business—that Core received West Bend policy on June 4).

on the very night of the fire—Konja decided that he wanted to maintain insurance with Encova, and he contacted Cardella to convey that he wanted to "stay with Encova."  Id. at 11–12, 15; see also Cardella Dep. at 54 (agreeing that Konja told Cardella that he wanted to maintain insurance with Encova after the loss).  When asked if it was "fair to say" that "the reason why [he] wanted to stay with Encova was that [he] did not want to start [his] insurance policy with West Bend with a loss of this type," Konja responded affirmatively.  Konja Dep. at 13.  Konja stated that, if the loss had not occurred, Family Foods would have proceeded by keeping West Bend as its insurer.  Id. at 32.

After deciding to stay with Encova, on either June 8 or June 9, 2021, Family Foods sent a check to Encova to maintain coverage.  Id. at 14.  Encova does not contest that its policy covered this loss.[3]  Encova paid Family Foods for the fire loss.  Id. at 19.

On June 10, 2021, West Bend issued an invoice to Family Foods with a due date of July 1, 2021, but Family Foods never made a payment to West Bend.  See Pl. Br. in Supp. Resp. to Mot. at 4; Def. Br. in Supp. Resp. at 2.

In the aftermath of the fire, Family Foods did not inform Encova that it had a policy with West Bend.[4]

---

[3] The parties provide different explanations for why Encova's policy covered the loss.  Encova submits that the expiration date for its policy was June 1, 2021 and that—though the policy had not been renewed by June 8—the loss was covered because it "fell within a grace period."  Pl. Br. in Supp. Mot. at 2.  West End submits that the Encova policy renewed annually and so remained in effect automatically.  Def. Br. in Supp. Mot. at 2 (citing Pl. Answers to Def. Interrogatories at 2 (Dkt. 35-10) (identifying multiple Encova policies, one of which had an effective end date June 1, 2022)); see also Encova Renewal Policy (containing June 1, 2022 end date).

[4] See 6/16/21 Encova Log (Dkt. 35-15) (reflecting summary of conversation between Cardella and Encova employee John Cunningham in which Cardella conveyed that Family Foods wanted to remain with Encova and did not mention West Bend); 6/16/21 Konja Statement (Dkt. 35-14) (reflecting that Konja's statement to Encova adjuster Marc Noe included no discussion of other business property or business income insurance).

4

Family Foods did not initially report the loss to West Bend.  Konja Dep. at 14.  Rather, Core prepared a lost policy release ("LPR")—which Encova identifies as a "cancelation request form"—to cancel Family Foods's West Bend policy.  See Pl. Br. in Supp. Mot. at 8.  On June 22, 2021, Core employee Rebecca Giacona emailed Chevalier of West Bend a "signed LPR" on behalf of "the insured"—i.e., Family Foods—which Chevalier forwarded within West Bend, stating: "Eff[ective] 6/1/21[;] Okay to cancel per LPR."  Def. Ex. G. to Mot. at PageID.1015 (Dkt. 35-12); see also Chevalier Dep. at 57–60.  This process cancelled Family Foods's West Bend policy.  See Chevalier Dep. at 57–58.

In a notice dated June 22, 2021, West Bend informed Core and Family Foods that the policy was "cancelled flat effective 06/01/2021."  6/22/21 Cancel Notice (Dkt. 35-17).

**D.  Encova Investigation and Family Foods Claim on West Bend**

Encova records reflect that Encova was informed of the potential existence of a West Bend policy on June 17, 2021.[5]  On that date, Cunningham of Encova emailed West Bend employee Shawn Ainsworth to investigate whether Family Food was an insured with West Bend, and on June 18, Ainsworth confirmed: "We do have a policy in force . . . with this business with inception date 6/1/2021."  6/18/21 Email (Dkt. 34-13).[6]

---

[5] See 6/17/21 Encova Log (Dkt. 35-16) (reflecting Cunningham's notes that Sawmiller discussed "their [sic] being another policy for the [insured]," as "[Sawmiller] has information that a policy may have been bound with West Bend Insurance," as well as separate notes regarding a conversation with "West Bend . . . to discuss if they have a policy for the [insured]") (capitalization modified).

[6] Additionally, West Bend phone records reflect that, on June 24, 2021, adjuster Marc Noe called on behalf of Encova and reported the fire loss to West Bend's reporting center.  6/24/22 West Bend Log (Dkt. 35-20) ("Caller just discovered that WBM [West Bend] also has a policy for the [insured] and that is why he is reporting the claim.") (capitalization modified).

Konja testified that he subsequently hired a public adjuster, D.J. Cremen, and that he understood that Cremen made a claim on West Bend for the loss. Konja Dep. at 17. On July 19, 2021, Cremen emailed West Bend employee Arnoldo Aleman: "It is our understanding that West Bend Insurance Company may have had a policy in force for the subject insured at the time of loss . . . . This email is intended to serve as notice that your insured may need to pursue [a] claim for all or pro rata share of damages associated with the subject fire." 7/19/21 Cremen Email (Dkt. 34-15). On July 19, Aleman responded to Cremen advising that the West Bend policy had been cancelled effective June 1, 2021. 7/19/21 Aleman Email (Dkt. 36-3).

## II.  ANALYSIS[7]

Encova brought the present action against West Bend in Wayne County Circuit Court, seeking (i) a declaratory judgment that West Bend was obligated to provide coverage for the loss on a pro-rata basis and (ii) payment under a contribution theory (Dkt. 1-2). West Bend asserted diversity jurisdiction to remove the action to this Court (Dkt. 1). Encova subsequently amended its complaint to add a claim for equitable subrogation (Dkt. 26).

In their motions for summary judgment, the parties dispute (i) whether West Bend ever had a binding agreement with Family Foods, and (ii) if that policy was in effect, whether Encova can

---

[7] In assessing whether either party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986). Though the parties cite cases from multiple jurisdictions, they agree that Michigan law applies to this dispute. See, e.g., Pl. Br. in Supp. Mot. at 14; Def. Br. in Supp. Mot. at 8, 14.

recover from West Bend any portion of the payment made to Family Foods.  The Court addresses each question in turn.

### A.  Whether West Bend Had a Policy in Effect at Time of Fire

West Bend argues that its policy with Family Foods never went into effect because the issuance of the policy required that both parties reach a mutual agreement on the contract, and—notwithstanding Core's request that West Bend bind the policy—Family Foods did not accept the deal.  See Def. Br. in Supp. Mot. at 13–15; Def. Br. in Supp. Resp. at 1, 4.

West Bend relies on Konja's testimony that he never understood that Family Foods had made a final decision as to accepting a deal with West Bend and instead thought the participants in the negotiations were "'going back and forth.'"  Def. Br. in Supp. Mot. at 14 (quoting Konja Dep. at 6–8, 34) (reflecting Konja's view that "nothing was a hundred percent done yet" in regard to moving insurance to West Bend).  West Bend also suggests that Konja did not sign off on any agreement Core made with West Bend.  Def. Br. in Supp. Mot. at 3 (citing Hartmann Dep. at 26); id. at 2 (asserting that neither Cardella nor Hartmann personally spoke to Konja about the terms of the policy offered by West Bend) (citing Cardella Dep. at 29; Konja Dep. at 8; Hartmann Dep. at 27).

Encova considers Konja's confusion about the status of the West Bend policy to be "legally meaningless."  Pl. Reply at 1.  In Encova's view, the West Bend policy went into effect when Konja agreed through his agent to bind coverage.  Id.

It is undisputed that Core—Family Foods's agent—submitted an application to West Bend requesting insurance coverage for Family Foods with a policy inception date of June 1, 2021.  See 5/4/21 Email.  Core then directed West Bend to bind coverage "effective 6/1/21."  5/25/21 Email. Konja agreed during his deposition that he was "aware" that Core had emailed West Bend to bind

coverage, that he "wanted" to move coverage to West Bend, and that he had "agreed to the proposal made by West Bend." Konja Dep. at 7–8. Core's employees understood that Konja had authorized Core to make this agreement on Family Foods's behalf. See Cardella Dep. at 22; Hartmann Dep. at 11–12 (Dkt. 34-5). Konja does not deny that Core was authorized to enter into insurance agreements on Family Foods's behalf. Multiple participants have testified to their understanding that the West Bend policy was effective and binding as of the effective date of June 1, 2021, including West Bend's own expert.[8] The parties note that Core and West Bend resolved some final details of Family Foods's new policy after the binder was accepted, but none of these matters prevented the parties from coming to an agreement on the final terms of the contract.[9]

West Bend concedes that "ordinary contract principles apply" to the interpretation of its insurance policy. Def. Br. in Supp. Mot. at 14. West Bind cites no case law in conflict with the ordinary contract principle that, when an authorized agent enters into a contract on behalf of a principal, the principal is liable for that contract. See, e.g., MBK Constructors, Inc. v. Lipcaman,

---

[8] Cardella and Hartmann both testified to their understanding that, once the binder was accepted, West Bend coverage existed as of the requested date of June 1, 2021. See Cardella Dep. at 82; Hartmann Dep. at 13; see also Sawmiller Dep. at 25. West Bend expert Michael Hale testified to his understanding that Family Foods had coverage through West Bend as soon as West Bend issued this policy. Hale Dep. at 35, 49, 16 (Dkt. 34-9).

[9] Hartman's email to Chevalier seeking to bind coverage also stated, "We do have a few changes," which were listed as: "Increase BPP [business personal property insurance] to 3,000,000"; "Increase sales to 7,500,000"; and "Insured Installed a backup generator which powers the whole store. Can you please apply credit for this." 5/25/21 Email. Additionally, that email lists seven "subjectivities" in the form of Core's answers to West Bend's questions. Id. Hartmann testified that she answered all of West Bend's questions, see Hartmann Dep. at 12–13, and Chevalier testified that the requested changes were "pretty basic ones" and that these outstanding points were resolved before West Bend issued the policy. Chevalier Dep. at 26–27. Konja testified that he was aware that some changes were requested, but he thought they were "small details," and he did not recall what they were. Konja Dep. at 10–11. Chevalier also testified that Core and West Bend exchanged emails between May 26 and May 27 concerning spoilage limits, which is a supplemental and optional coverage enhancement. See Chevalier Dep. at 16–17, 28–29.

No. 344079, 2019 WL 5596390, at *4 (Mich. Ct. App. Oct. 29, 2019).  This Court declines to endorse West Bend's unsupported assertion that a principal can escape his or her contractual duties by claiming confusion as to the state of negotiations after the ink is dry on a final agreement executed by the principal's agent.  West Bend's insurance policy was a binding contract that was in effect on the date of the fire.

### B. Whether Encova Can Recover from West Bend

West Bend argues that, even if its policy was in effect at the time of the loss, there is no legal theory allowing Encova, an insurer that was not party to West Bend's contract with Family Foods, to recover on that policy.  See Def. Br. in Supp. Mot. at 7–11; Def. Br. in Supp. Resp. at 4.

Insurance companies often seek relief from other insurance companies when the insurers' policies contain "Other Insurance" provisions.  The Michigan Supreme Court has explained: "'Other insurance' clauses are provisions inserted in insurance policies to vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss." St. Paul Fire & Marine Ins. Co. v. Am. Home Assur. Co., 514 N.W.2d 113, 115 (Mich. 1994). These clauses fall into "three general categories": (i) "pro-rata" clauses, which "purport[] to limit the insurer's liability to a proportionate percentage of all insurance covering the event"; (ii) "escape" or "no-liability" clauses, which "provide[] that there shall be no liability if the risk is covered by other insurance"; and (iii) "excess" clauses, which "limit[] the insurer's liability to the amount of loss in excess of the coverage provided by the other insurance."  Id.

As Encova notes, see Pl. Mot. at 2, the identical "Other Insurance" clauses in the Encova and West Bend policies are pro-rata clauses because "the language creates a formula for

establishing the liability of the insurer when other, collectible insurance exists on a proportionate

basis." See St. Paul Fire, 514 N.W.2d at 115.[10]

When two policies arguably cover the same claim, the "preferred practice" under Michigan

law is to "give effect to the intent of both policies." Hudson v. State Farm Fire & Cas. Co., 93 F.

Supp. 3d 773, 777 (E.D. Mich. 2015). Complications may arise in reconciling different policies

when, for example, one insurer provides a pro-rata "Other Insurance" policy and the other provides

an excess policy,[11] or if both insurers provide excess policies.[12]

In this case, however—like in Hudson—"given that each clause is a pro-rata clause, the

two insurance policy clauses are complementary: [Encova] and [West Bend] are only responsible

for their respective share of the loss." 93 F. Supp. 3d at 777 (citing State Auto. Ins. Co. v. Sherman,

No. 265689, 2006 WL 1412766, at *4 (Mich. Ct. App. May 23, 2006) (finding that plaintiff and

---

[10] Other courts have found language substantially similar to the language in the "Other Insurance" provisions at issue here to constitute pro-rata clauses. See, e.g., St. Paul Fire, 514 N.W.2d at 116 (analyzing clauses stating: (i) "[I]f the Insured has other insurance against a loss covered by this Policy, the Company shall not be liable under this Policy for a greater proportion of such loss than the limit of liability stated in the Declarations bears to the total limit of liability of all valid and collectible insurance against such loss . . . ." and (ii) "If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy to a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss . . . ."); Hudson v. State Farm Fire & Cas. Co., 93 F. Supp. 3d 773, 776 (E.D. Mich. 2015) (analyzing clause stating: "If a loss covered by this [State Farm] policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.").

[11] See, e.g., St. Paul Fire, 514 N.W.2d at 120–121 (addressing disputes between insurers with excess "other insurance" policy and insurers with pro-rata "other insurance" policy).

[12] See, e.g., Pioneer State Mut. Ins. Co. v. TIG Ins. Co., 581 N.W.2d 802, 806 (Mich. Ct. App. 1998) ("[W]here there are two competing and mutually repugnant 'excess' clauses, the courts should attempt to apportion coverage between the policies in a reasonably equitable manner. . . . Under such circumstances, liability is to be apportioned on the basis of the policy limits.") (punctuation modified).

defendant insurers were each obligated to pay 50% of settlement arising from insured's claim because "[b]oth policies state[d] that where multiple insurance policies provide primary coverage for the same loss, the insurers [were] obligated [to] provide coverage on a pro-rata basis," and "each insurer's limit of insurance constitute[d] 50 percent of the total applicable limits of insurance")).

These authorities counsel in favor of giving force to the "Other Insurance" clauses in the parties' policies and finding that each insurer must pay its "share"—that is, "the proportion" that each policy's coverage limit bears to "the limits of insurance" on the other policy's coverage. Encova Policy Conditions; West Bend Policy Conditions.  See Hudson, 93 F. Supp. 3d at 778 (finding that one insurer "c[ould] never be liable for more than its pro-rata share of losses" where both it and other insurer covered same loss on pro-rata basis under other insurance provision); Sherman, 2006 WL 1412766, at *4; Zurich-Am. Ins. Co. v. Amerisure Ins. Co., 547 N.W.2d 52, 58–59 (Mich. Ct. App. 1996) (determining that liability should be "allocated in accordance with the policy language" where two other insurance pro-rata policies provided coverage for same loss).

The Court proceeds by considering West Bend's arguments that Encova cannot collect West Bend's share on the facts of this case.  The Court finds these arguments to lack merit.

### i.    Whether Family Foods Effectively Cancelled West Bend Policy

West Bend argues that it cannot be held liable for its insurance policy with Family Foods because Family Foods cancelled the policy—even though Family Foods cancelled the policy after the date of loss.  See Def. Br. in Supp. Mot. at 15.  West Bend submits that the policy provided for a means to cancel "at any time."  West Bend also notes that the Michigan Insurance Code allows a policy holder to cancel a fire insurance policy at "'any time.'"  Id. at 18 (quoting Mich. Comp. L. § 500.2833(1)(h)).

Encova argues that an insurer remains liable to a third party for a loss covered by its policy even if the insured attempts to retroactively cancel the policy after the date of loss.  Pl. Br. in Supp. Mot. at 15.  Encova acknowledges that the West Bend policy allows West Bend to cancel the policy at any time, but it notes that the policy provides no guidance on setting the effective date of the cancellation.  Id. at 14.

Encova persuasively cites several sources for the principle that Family Foods's cancellation following the loss does not absolve West Bend of liability for a policy that was in effect at the time of the loss.  Encova refers the Court to a Michigan insurance treatise stating:

> An insurance policy may be cancelled by a mutual consent of the parties at any time before loss, as by consent either expressed or implied from circumstances, absent intervening rights . . . However, the liability of an insurer with respect to insurance become[s] absolute whenever injury or damage covered by the insurance policy occurs, and the policy may not be cancelled or annulled as to that liability by agreement between the insurer and the insured after the occurrence of the injury or damage.

14 Mich. Civ. Jur. Ins. Section 311, "Mutual Consent to Cancellation or Surrender of Insurance Policy" (emphasis added).

Encova also cites multiple Michigan automobile insurance cases establishing that liability becomes fixed on the date of loss, notwithstanding subsequent attempts at cancellation.  Most relevant is another dispute implicating multiple insurers potentially liable for the same loss.  In Madar v. League Gen. Ins. Co., an individual with no-fault automobile insurance sold his vehicle, and then was struck and killed by another vehicle as a pedestrian.  394 N.W.2d 90, 91 (Mich. Ct. App. 1986).  The decedent's son sought to cancel the decedent's insurance policy retroactively to the date when the decedent sold the vehicle, and then the plaintiff sought to recover exclusively from the offending vehicle driver's insurer.  Id.  The court affirmed the grant of summary judgment

to the defendant insurer of the offending driver and found that the decedent's no-fault insurer was liable under the terms of that policy, explaining:

> [T]he insured's estate and his no-fault insurer [could not], after the insured's death, retroactively cancel all insurance coverage effective to a date prior to the accident, because the insured sold his automobile prior to the accident.  Rights created under an insurance policy become fixed as of the date of the accident. . . .  It is clear that the policy behind this principle is to prevent an insurer from retroactively cancelling coverage on a date prior to the date of the accident in order to shift liability to another insurer . . . .

Id. at 93–94.[13]

Encova further points to case law outside of Michigan reinforcing the same principle in contexts other than auto insurance.  For example, in Commercial Union Assur. Co. of Australia, Melbourne v. Hartford Fire Ins. Co., separate insurers provided duplicative coverage for helicopter parts damaged during shipment, and plaintiff insurers sued the defendant insurer for contribution despite the insured individual's attempt to cancel the defendant insurer's policy after the loss.  86 F. Supp. 2d 921, 932 (E.D. Mo. 2000).  Applying Missouri law—which provided that, "if a loss occurs before a notice or request for cancellation is received by the insurer, the liability of the company is not extinguished"—the court found: "[b]ecause the loss occurred on August 11, the

---

[13] See also Detroit Auto. Inter-Ins. Exch. v. Ayvazian, 233 N.W.2d 200, 202–203 (Mich. Ct. App. 1975) (affirming finding that insured's cancellation of vehicle insurance following collision was ineffective, stating: "since coverage existed at the time the accident occurred[,] that coverage would have continued from that moment on regardless of the subsequent acts of the parties. . . . 'The liability of the insurer with respect to insurance . . . becomes absolute whenever injury or damage covered by such policy occurs.  The policy may not be canceled or annulled as to such liability by agreement between the insurer and the insured after the occurrence of the injury or damage.'") (quoting 1 Long, The Law of Liability Insurance, s 3.25, pp. 3, 83–84) (punctuation modified); Clevenger v. Allstate Ins. Co., 505 N.W.2d 553, 558 (Mich. 1993) (finding where insured had sold vehicle on August 1, 1987 and sent notice to automobile insurer that she was cancelling the policy on August 6 that insurer was "obligated to defend and indemnify" both the seller and the buyer of the vehicle in a tort action arising from a collision "[b]ecause the insurance policy covering the Pontiac was still in effect at the time the accident occurred, August 2, 1987, by the express terms of the policy").

cancellation letter received on August 12 was void." Id. at 930; see also id. at 931 (awarding plaintiffs one half of settlement amount paid "as defendant's pro rata share of the insurance loss it was obligated to cover," explaining that "[b]oth insurers bargained to provide full primary insurance in an amount which covered the insureds' loss," and so it was "equitable that they each cover half the loss").[14]

West Bend considers the no-fault automobile cases cited by Encova to be inapposite, arguing that these cases concern "the specific need to afford protection to persons suffering injury" and that any "third party rights" were those of someone "injured in an accident." Def. Br. in Supp. Resp. at 9. But the principle cited by Encova is broader than the automobile industry, and West Bend's latter point overlooks case law in which insurers and other entities in contractual relationships with the insureds had cognizable third-party interests in payments due under the insureds' policies. See Madar, 394 N.W.2d at 91; Hartford, 86 F. Supp. 2d at 930–932; Vermont, 705 F. Supp. at 1021.

West Bend also argues that Hartford concerned a "non-volunteer," apparently suggesting that the case is inapplicable because Encova made payment to Family Foods voluntarily. Id. at 15. Hartford, though, does not rely on any party's "non-volunteer" status. And regardless, as Encova correctly observes, see Pl. Br. in Supp. Mot. at 24, "where an insurance carrier pays the expenses

---

[14] See also Soc'y Ins. v. Capitol Indem. Corp., 659 N.W.2d 875, 879 (Wis. 2003) (finding that "retroactive cancellation" of insurance policy by landlord was "contrary to public policy" and ineffective because "the rights of the parties become fixed when the loss occurs" in dispute between insurers of landlord and tenant); Vermont Inv. Cap., Inc. v. Granite Mut. Ins. Co., 705 F. Supp. 1019, 1021 (D. Vt.), aff'd sub nom. Vermont Inv. v. Granite, 888 F.2d 1377 (2d Cir. 1989) (finding that mortgagee-trustee could recover from defendant insurer on fire loss to real estate covered by mortgagor's insurance policy, even though mortgagor—no longer interested in closing on burnt-down house—tried to cancel the policy, stating: "[Mortgagor] purported to cancel the policy after the loss. If the policy was effective at the time of the fire, [mortgagor's] later cancellation would not affect a valid interest in the policy at the time of the loss.") (emphasis in original).

of its own insured pursuant to an insurance contract, it is not a volunteer." <u>Auto Club Ins. Ass'n v. New York Life Ins. Co.</u>, 485 N.W.2d 695, 698 (Mich. 1992).

West Bend is unable to cite any case law where an insured's attempt to cancel a policy that was in effect on the date of the loss relieved the insurer of liability for the loss. As Michigan courts regularly recite, <u>see, e.g.</u>, <u>Ayvazian</u>, 233 N.W.2d at 202–203; <u>Madar</u>, 394 N.W.2d at 93–94: "The liability of the insurer. . . becomes absolute whenever injury or damage covered by such policy occurs," and "[t]he policy may not be canceled . . . after the occurrence of the injury or damage," 1 Long, <u>The Law of Liability Insurance</u>, s 3.25, pp. 3, 83–84. Family Foods's attempt to cancel its West Bend policy after the loss does not preclude Encova's recovery against West Bend.[15]

### ii.    Whether Encova Can Recover on Theory of Subrogation

Encova submits that it can recover West Bend's share under a theory of equitable subrogation. The Court agrees. "'Under Michigan law, the right of an insurer who pays the total amount of a loss to seek contribution from a co-insurer who also is on the risk is based on the theory of subrogation.'" <u>Hudson</u>, 93 F. Supp. 3d at 776 (finding that insurer had standing to bring

---

[15] Additionally, both sides invoke <u>Scrima v. John Devries Agency, Inc.</u>, 103 B.R. 128 (W.D. Mich. 1989), even though it is distinguishable from our context, as it addressed whether an insurer that had cancelled its policy <u>before</u> the loss could be responsible for a portion of the loss in a claim brought by the insured's other insurer. <u>Id.</u> at 130. The district court said it could not, because the cancellation post-dated the bankruptcy filing. <u>Id.</u> at 132. West Bend argues that the decision counsels rejecting Encova's claim because the district court rejected the cancelling insurer's defense only because of the violation of the automatic stay. <u>See</u> Def. Br. in Supp. Resp. at 9–10. But the district court did not address what the cancelling insurer's rights would have been had it attempted to cancel after the loss had occurred. Because the context of the instant case concerns a post-loss attempt to cancel, <u>Scrima</u> offers no support to West Bend. Further, <u>Scrima</u> did make statements fully supportive of Encova's position on how Michigan law treats multiple insurers with policies in effect as of the time of loss: "[U]nder Michigan law liability between insurance companies is prorated where dual coverage exists on a property at the time of a loss because one of the policies was not effectively cancelled." <u>Scrima</u>, 103 B.R. at 135. It also stated, "Michigan law recognizes overlapping coverage with prorated liability between insurers." <u>Id.</u> Thus, its holding does not support West Bend, and its pronouncements on Michigan law are consistent with Encova's and this Court's pronouncements on Michigan law.

subrogation claim against other insurer based on pro-rata clauses in both policies) (quoting <u>Cent. Mich. Bd. of Trustees v. Employers Reinsurance Corp.</u>, 117 F.Supp.2d 627, 638 (E.D. Mich. 2000)).[16]

Equitable subrogation allows a subrogee who has paid an obligation to a subrogor—here, Encova, having made a payment to Family Foods—to attain the subrogor's rights to recover against a third party responsible for that obligation—i.e., West Bend. <u>See, e.g.</u>, <u>Mich. Millers Mut. Ins. Co. v. Mich. Basic Prop. Ins. Ass'n</u>, No. 175484, 1996 WL 33362353, at *1–2 (Mich. Ct. App. June 25, 1996) (explaining applicability of subrogation to claim by one insurer seeking recovery from other insurer for payment on insured's policy). Not only do Michigan courts generally apply subrogation principles to disputes between insurers, but the Michigan legislature has stated that, in the specific context of the provision of fire insurance, policies must provide that "the insurer is subrogated to the insured's right of recovery from other parties." Mich. Comp. L. § 500.2833(1)(r).

West Bend's arguments that subrogation does not apply here are unconvincing. It suggests that Encova has received the fruits of its bargain, submitting that Encova cannot seek relief from West Bend after "'pay[ing] the debt in performance of [its] own covenants." Def. Br. in Supp. Mot. at 7–10 (quoting <u>Michigan Hosp. Serv. v. Sharpe</u>, 63 N.W.2d 638, 641 (Mich. 1954) (finding that non-profit providing hospital services could not bring subrogation suit against subscriber to service plan) (punctuation modified)). But by the terms of the "Other Insurance" clauses in both

---

[16] <u>See also</u> <u>Hudson</u>, 93 F. Supp. 3d at 776 (citing <u>Detroit Auto. Inter-Ins. Exch. v. Detroit Mut. Auto. Ins. Co.</u>, 59 N.W.2d 80, 82 (Mich. 1953) (finding that plaintiff insurer that had paid judgment against insured had "performed the terms of its contract with [insured] and thereby became subrogated to the rights of [insured] . . . . and as such had a right to bring an action for the amount of money paid that should have been paid by defendant insurance company")); <u>Scrima</u>, 103 B.R. at 135 (stating that insurer had "right of subrogation to its extent of the loss" where other insurance policy covered same claim).

16

policies, Encova <u>overpaid</u> on its duties, and it "can never be liable for more than its pro-rata share of losses." <u>Hudson</u>, 93 F. Supp. 3d at 778.

West Bend also argues that "Michigan courts have permitted recovery between liability insurers on an equitable subrogation theory only in situations in which there was an accident or occurrence affecting the insured's liability or involving claims by third parties." Def. Br. in Supp. Mot. at 9–10 (citing <u>Frankenmuth Mut. Ins. Co. v. Cont'l Ins. Co.</u>, 537 N.W.2d 879, 881 n.6 (Mich. 1995); <u>Com. Union Ins. Co. v. Med. Protective Co.</u>, 393 N.W.2d 479, 482 (Mich. 1986); <u>Farm Bureau Ins. Co. v. TNT Equip., Inc.</u>, 939 N.W.2d 738, 742 (Mich. Ct. App. 2019)).

But none of the cases cited by West Bend articulated any confinement of equitable subrogation only to cases involving the insured's liability or claims by third parties. And there is no cogent principle offered by West Bend to justify any such confinement, given that the inequity of one insurer shouldering fully the responsibility that should be shared with another insurer is present regardless of whether the insurers' obligations arise in the context of liability claims or fire damage claims. Indeed, courts applying Michigan law have applied equitable subrogation in first-party loss cases. <u>See, e.g.</u>, <u>Detroit Auto.</u>, 59 N.W.2d at 82 (finding that plaintiff insurer that had paid judgment against insured on policy covering vehicle accident had "became subrogated to the rights of [insured]" and "had a right to bring an action for the amount of money paid that should have been paid by defendant insurance company"); <u>Scrima</u>, 103 B.R. at 135 (explaining that insurer covering insured's loss under building and business policy had "right of subrogation to its extent of loss" against other insurer covering same loss).

Additionally, West Bend tried to characterize Encova as a "volunteer" who cannot seek subrogation after choosing to pay on a claim. <u>See</u> Def. Br. in Supp. Resp. at 4. But as discussed,

an insurer paying its insured on a policy "is not a volunteer." Auto Club Ins., 485 N.W.2d at 698 (allowing insurer to seek subrogation against other insurer).

West Bend also argues that Family Foods never made a claim on West Bend, apparently suggesting that Encova—as a subrogee of Family Foods—cannot collect from West Bend without an initial claim by Family Foods. Def. Br. in Supp. Resp. at 6–8. West Bend does not identify any case law or language in the policy requiring a claim by the insured before the insurer can step into the insured's shoes as a subrogee. Regardless, Family Foods did make a claim; public adjuster Cremen sent West Bend a letter providing "notice that your insured may need to pursue [a] claim for all or pro rata share of damages associated with the subject fire" and requesting that West Bend contact him to give "immediate attention" to "claim resolution." 7/19/21 Cremen Email. This language belies West Bend's suggestion that Cremen was only "confirming a history of other communications about the claim called in by Encova." Br. in Supp. Resp. at 7. Further, Konja testified that he understood that Cremen made a claim on West Bend for the loss. Konja Dep. at 17.

West Bend has failed to establish that subrogation—widely accepted in Michigan as an avenue for one insurer to seek relief from another under the terms of their insurance policies— does not apply here. Encova may seek payment from West Bend via subrogation. See Hudson, 93 F. Supp. 3d at 776; Detroit Auto., 59 N.W.2d at 82.

### iii.    Whether Encova Can Recover on Theory of Contribution

Encova is also correct that Michigan allows it to recover West Bend's share for the loss under a theory of contribution. In State Farm Fire & Cas. Co. v. Farmers Ins. Exch., the Michigan Court of Appeals found that one insurer had a right to seek contribution from another insurer where both insurers had pro-rata policies covering the same property loss caused by a fire. 264 N.W.2d

62, 64 (Mich. Ct. App. 1978).  The court explained that, per "statutorily mandated policy," "the standard fire insurance policy in Michigan requires only pro rata liability where there are two insurance policies covering the same property," and so "plaintiff and defendant were each legally obligated to pay only one-half of the claim and defendant was unjustly enriched by plaintiff's payment of the full claim."  Id. (citing Mich. Comp. L. § 500.2832).  Noting that the Michigan legislature "g[ave] a statutory right of subrogation" in this circumstance, the court found contribution an appropriate vehicle for the insurer's recovery.  Id. (citing Mich. Comp. L. § 500.2836(4)).

Similarly, Auto-Owners Ins. Co. v. S. Michigan Mut. Ins. Co. affirmed a grant of a judgment to the plaintiff insurer in a contribution action such that "the loss [was] apportioned between the two insurance companies" where the plaintiff insurer had paid the entirety of a fire loss in a settlement with the insured on property that was covered by both insurers.  333 N.W.2d 168, 169 (Mich. Ct. App. 1983).  Finding that the plaintiff could "seek contribution subsequent to paying the insured under the insurance policy," the court explained: "where two or more insurance policies cover the same property, an insurance company's obligation to the insured is limited to the proportion of the loss that the amount insured by the company bears to the entire amount of insurance."  Id. (citing Mich. Comp. L. § 500.2832).

West Bend—unable to identify Michigan case law where insurers covering the same fire loss on a pro-rata basis could not seek contribution from each other—attempts to distinguish State Farm and Auto-Owners by noting that these cases followed "a prior and different version of the Insurance Code" that was "repealed as of 1992."  Def. Br. in Supp. Resp. at 13 (citing Mich. Comp. L. § 500.2832).  However, although the statute on the provision of fire insurance has been updated, the current version still contains the provisions on which the Michigan courts relied: it "requires

only pro rata liability where there are two insurance policies covering the same property," and it "gives a statutory right of subrogation." <u>State Farm</u>, 264 N.W.2d at 64. <u>See</u> Mich. Comp. L. § 500.2833(k) (requiring that "insurer's liability [] not be greater than the pro rata share with other insurance for the peril involved"); § 500.2833(k) (stating that "the insurer is subrogated to the insured's right of recovery from other parties").[17]

West Bend cites <u>Farm Bureau</u>, 939 N.W.2d 738 for the premise that "the current statutory framework does not contemplate contribution by one insurer against another for a first party property loss claim." Def. Br. in Supp. Resp. at 14. But <u>Farm Bureau</u>—which did not discuss contribution or Mich. Comp. L. § 500.2833—found that one insurer could not seek relief from another insurer on a subrogation theory because the two policies covered different insureds and the plaintiff's insureds were not intended third-party beneficiaries under the defendant's policy. 939 N.W.2d at 742–748. In this case, there is no dispute that Encova and West Bend have the same insured.

Encova may seek contribution from West Bend where both insurers covered the same fire loss under pro-rata other insurance policies. <u>See</u> <u>State Farm</u>, 264 N.W.2d at 64; <u>Auto-Owners</u>, 333 N.W.2d at 169; § 500.2833(k).

---

[17] When <u>State Farm</u> and <u>Auto-Owners</u> were decided, Mich. Comp. L. § 500.2832 provided a standard form for the provision of fire insurance stating: "This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not." Mich. Comp. L. § 500.2832 (repealed 1992). It also included a subrogation section stating: "This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company." <u>Id.</u> Mich. Comp. L. § 500.2836(4) stated in regard to "Subrogation": "Whenever an insurer is entitled by the terms of the Michigan standard policy to subrogation against a third party, this shall be considered to include contractual as well as tort rights of action, but only to the extent of the loss. An action may be maintained by either the insured or insurer or by both of them jointly, to recover their respective portions of the loss." Mich. Comp. L. § 500.2836(4) (amended 1990).

### iv. Whether the "Targeted Tender" Doctrine Bars Encova's Recovery

There is also no merit to West Bend's argument that Family Foods's decision to make a claim on Encova <u>before</u> it made any claim on West Bend means that only Encova is liable for coverage.   West Bend submits that "some jurisdictions" have adopted the "targeted tender doctrine," under which, "where two insurers both would provide defense and/or coverage and the policy holder selects one[, . . .] the policy holder's decision is controlling . . . ."  Br. in Supp. Mot. at 16–17.  West Bend states that the "only case found in Michigan addressing this scenario of targeted tender" was <u>St. Paul Mercury Ins. Co. v. Huitt</u>, 336 F.2d 37 (6th Cir. 1964).  <u>Id.</u> at 17.

<u>St. Paul Mercury</u>—which makes no mention of the targeted tender doctrine—does not support the application of that doctrine here.  Interpreting Michigan law, the Sixth Circuit stated in relevant part: "With regard to the providing of a defense, [the insured party] has double insurance and may call upon either or both carriers to fulfil their policy obligations in this respect." <u>St. Paul Mercury</u>, 336 F.2d at 44.  However, the court explicitly declined to make a finding as to "[w]hether[,] after fulfilment of their contractual obligations to defend[,] the insurance carriers may have some right of contribution as between themselves."  <u>Id.</u>  No binding authority requires the result that West Bend demands.

West Bend has failed to introduce any material issues of fact undermining the conclusions that (i) it is bound by the terms of the pro-rata clause in its "Other Insurance" provision to pay its proportional share for a loss covered by multiple policies, <u>see</u> <u>Hudson</u>, 93 F. Supp. 3d at 778; <u>Sherman</u>, 2006 WL 1412766, at *4; <u>Zurich-Am.</u>, 547 N.W.2d at 58–59, and (ii) Encova can collect that share under either a theory of subrogation, <u>see</u> <u>Hudson</u>, 93 F. Supp. 3d at 776; <u>Detroit Auto.</u>, 59 N.W.2d at 82, or a theory of contribution, <u>see</u> <u>State Farm</u>, 264 N.W.2d at 64; <u>Auto-Owners</u>, 333 N.W.2d at 169.

21

The Court grants Encova's motion for summary judgment, denies West Bend's motion for summary judgment, and finds West Bend liable to Encova for its share of the loss under the terms of the agreement it signed with Family Foods.

Consistent with Encova's request in its motion for a determination of damages following this Court's ruling on liability, the Court will convene a status conference to discuss what proceedings are required to address that issue.

### III.  CONCLUSION

For the reasons explained above, the Court grants Encova's motion for summary judgment (Dkt. 34) and denies West Bend's motion for summary judgment (Dkt. 35).

SO ORDERED.

Dated:  March 30, 2023                              s/Mark A. Goldsmith
      Detroit, Michigan                        MARK A. GOLDSMITH
                                       United States District Judge